**MBANK CORPUS CHRISTI, N.A., n/k/a Corpus Christi National Bank, Appellant,**

**v.**

**Janet Morgan SHINER and Jack R. Morgan, Appellees.**

**No. 13-91-537-CV.**

Court of Appeals of Texas, Corpus Christi.

Oct. 15, 1992.

Rehearing Overruled Nov. 19, 1992.

L. Nelson Hall, M. Ryan Dyson, Klebert & Head, Corpus Christi, for appellant.

Ryan E. Stevens, Corpus Christi, for appellees.

Before NYE, C.J., and DORSEY and GILBERTO HINOJOSA, JJ.

## OPINION

DORSEY, Justice.

This action between a bank and legatees of a decedent depositor concerns the rights of the parties to a joint account. The rights at issue are those of the depository bank and the heirs of a depositor in a joint account. The respective rights of the depositor's heirs as against the joint tenant are not implicated. The trial court granted summary judgment in favor of appellees Shiner and Morgan and denied the Bank's motion for summary judgment. By two points of error, the Bank contends that the trial court erred by doing so. We reverse and render judgment in favor of the Bank.

On November 4, 1980, Cena S. Morgan, Sr. opened a joint checking account at MBank (now Corpus Christi National Bank, or "CCNB"). The account had two authorized signatories: Morgan, Sr. and his sister, Lois Weber, and was designated a "joint tenancy with right of survivorship" account. On August 25, 1986, Morgan, Sr. opened a $25,000 Certificate of Deposit account at MBank on behalf of himself and Weber. The contract for the CD account does not designate it a joint tenancy with right of survivorship account.

On October 13, 1986, Morgan, Sr. died. On November 3, 1986, Weber requested that MBank pay the proceeds from the certificate of deposit to her. MBank complied, tendering her a cashier's check for $25,038.84, the amount of the original deposit plus interest. On the same day, appellee Janet Morgan Shiner (the decedent's granddaughter) spoke with MBank personnel about accounts her grandfather had with the Bank. On November 4, 1986, Shiner met with MBank personnel, and on January 27, 1987, Shiner and her co-appellee Morgan (the decedent's grandson) presented a certified copy of an affidavit of heirship to the Bank, the affidavit naming the appellees as the decedent's only heirs. Two days later, a county court at law approved a Small Estate affidavit naming them decedent's distributees. This order

was given to MBank on February 17, 1987, along with a request for an accounting of all of the decedent's accounts.

Upon learning that the $25,000 certificate of deposit account was paid to Weber, appellees sued MBank for breach of its certificate of deposit contract with Cena Morgan, Sr. They contended that, as the CD account did not contain a right of survivorship in favor of Weber, upon decedent's death the funds in the account became the property of his heirs, the appellees.

The appellees filed a Partial Motion for Summary Judgment, contending that MBank wrongfully paid the funds to the survivor on that account, Weber, rather than to them, the decedent's heirs, in violation of the Probate Code. MBank filed a response and its own Motion for Summary Judgment asserting that it was the depository for a joint account and as such the Probate Code protected it when paying the account funds to the surviving account holder. The trial court granted summary judgment in favor of appellees, denying the Bank's motion. The court found no material issue of fact existed with regard to appellees' ownership of the CD because no right of survivorship existed in favor of Weber. Accordingly, the court held that the bank breached the CD account contract by paying those funds to Weber rather than to decedent's heirs. It is from those actions that MBank appeals.

■ When both parties file motions for summary judgment and the trial court grants one and denies the other, the appealing party must complain of both the granting of the opponent's motion and the denial of its own in order to properly present the errors for appellate review. *Tobin v. Garcia,* 159 Tex. 58, 316 S.W.2d 396, 400 (1958); *Resource Savs. Ass'n v. Neary,* 782 S.W.2d 897, 903 (Tex.App.—Dallas 1989, writ denied). The Bank properly complains of both rulings here. The Bank must then show that as the movant for summary judgment, it established that no genuine issue of material fact existed and that it was entitled to judgment as a matter of

law. *Swilley v. Hughes*, 488 S.W.2d 64, 67 (Tex.1972); *Gibbs v. General Motors Corp.*, 450 S.W.2d 827, 828 (Tex.1970).

■ TEX.PROB.CODE ANN. § 436(4) (Vernon 1980) defines "joint account" as "an account payable on request to one or more of two or more parties whether or not there is a right of survivorship." Section 436(1) defines "account" as, among other things, a certificate of deposit. Morgan, Sr. opened a certificate of deposit in the name of "C.S. Morgan Sr. or Lois Weber." The customer data card reads, "Name: C.S. Morgan Sr. or Lois Weber." The certificate of deposit was a joint account.

TEX.PROB.CODE ANN. § 439(a) (Vernon 1980) addresses the creation of a right of survivorship. That provision states,

Sums remaining on deposit at the death of a party to a joint account belong to the surviving party or parties against the estate of the decedent if, by a written agreement signed by the party who dies, the interest of such deceased party is made to survive to the surviving party or parties. *A survivorship agreement will not be inferred from the mere fact that the account is a joint account.* * * * (emphasis added)

The Certificate of Deposit contract here contained a list of options, including whether to make the account a joint tenancy with or without right of survivorship. Morgan, Sr. chose neither option. Therefore, without a written agreement, a right of survivorship in Weber was not created, although the account was joint.

The heirs contend that § 439(d) applies to automatically transfer the funds in the account to them. That section states:

In other cases, the death of any party to a multiple-party account has no effect on beneficial ownership of the account other than to transfer the rights of the decedent as part of his estate.

The right transferred to the heirs upon Morgan, Sr.'s death consisted of his co-holder status in this joint account.

■ Probate Code section 445 specifically instructs on who may receive payment of a joint account after death or disability of a party to the account. That section provides,

Any sums in a joint account may be paid, on request, to any *party without regard to* whether any other party is incapacitated or deceased at the time the payment is demanded, *but* payment may *not* be made *to the personal representative or heirs* of a deceased party *unless* proofs of death are presented to the financial institution showing that the decedent was the last surviving party *or unless* there is no right of survivorship under Section 439 of this code. (emphasis added)

Therefore, the funds may be paid to either party on the account regardless of the death of the other; and, unless proof of death is presented to the bank, or unless no right of survivorship exists on the account, the heirs of the deceased party to the joint account have no right to payment of the funds contained in it.

A Death Certificate was filed with the Bank on November 3, 1986, the same day Weber withdrew the funds from the CD account. Because there was no right of survivorship, the funds could properly have been paid to Morgan, Sr.'s heirs, appellees here, or to Weber, the co-holder of, and original party to, the joint account, as provided by §§ 439(d) and 445.

■ The issue is whether the Bank is liable for paying the money to Weber rather than to her competing interest-holders, the appellees. The applicable Probate Code provision is § 448, "Discharge from Claims." The section provides, in pertinent part,

Payment made as provided by Section ... 445 ... of this code discharges the financial institution from all claims for amounts so paid *whether or not* the payment is *consistent with the beneficial ownership of the account as between parties,* ... *or beneficiaries*, or their successors. The protection here given does *not* extend to payments made *after* the financial institution has received *written notice* from any party able to request present payment ... that withdrawals in accordance with the terms of

747

the account should *not* be permitted. * * * No other notice or any other information shown to have been available to a financial institution shall affect its right to the protection provided here. (emphasis added).

Section 448 also notes that the protection provided by it has no effect on the rights of the parties in disputes between themselves or their successors concerning the beneficial ownership of the funds withdrawn from the multi-party account.

Thus, between competing interests in a joint account, the bank is fully discharged from liability when it pays the other party on the account, unless one of the parties gives written notice to the bank that no payment should be made. *Bandy v. First State Bank, Overton*, 835 S.W.2d 609 (Tex. 1992).

Appellees gave no written notice to the Bank instructing it not to allow Weber to withdraw the certificate of deposit funds. Absent such written notice, the Bank is protected from liability to the appellees under § 448. No genuine issue of material fact exists. The trial court erred by granting summary judgment in favor of Shiner and Morgan and denying the Bank's motion for summary judgment. The judgment of the trial court is therefore REVERSED and RENDERED in favor of appellant MBank.