Becker v. State







COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

)
A.G. EDWARDS & SONS, INC.,                   )                  No. 08-03-00495-CV
)
                                    Appellant,                        )                             Appeal from
)
v.                                                                          )                  384th District Court
)
MARIA ALICIA BEYER,                                  )                  of El Paso County, Texas
)
                                    Appellee.                          )                  (TC# 2001-1701)

O P I N I O N

            This appeal arises from a failed attempt to create a joint tenancy with right of survivorship
between a father and a daughter. A.G. Edwards & Sons, Inc. appeals from a judgment in favor of
Maria Alicia Beyer. We modify the judgment and affirm as modified.
FACTUAL SUMMARY
            In 1985, Maria Alicia Beyer and her father, Federico Beyer, created a joint account at A.G.
Edwards & Sons, Inc. (AGE). This account was set up as a joint tenancy with rights of survivorship
(JTWROS). In 1997, Beyer obtained permanent alien status which required her to pay taxes on the
account. To avoid paying taxes, the account was converted into a single account held only in Mr.
Beyer’s name. After Mr. Beyer suffered a stroke in October of 2000 which resulted in significant
impairment, Beyer met with James Niemeier, Mr. Beyer’s investment broker at AGE, to discuss how
she could gain access to Mr. Beyer’s account in order to pay his medical bills. Because Mr. Beyer
could not speak due to the stroke, Niemeier informed Beyer that he could not help her. 
            Mr. Beyer later recovered his speech and on the morning of December 8, 2000, he instructed
Beyer to phone Niemeier about the account. After Niemeier got on the line, Beyer handed the
telephone to her father who instructed Niemeier to “put the account in [Ms. Beyer’s] name.” 
Mr. Beyer returned the phone to Beyer, and according to Beyer, Niemeier told her “that it’s good for
you to have a joint account agreement with right of survivorship.” Niemeier informed Beyer that
he was leaving the office early but she could pick up the required documents and return them to him
before 4 p.m. that same day. Beyer went to AGE that same morning and met with Niemeier who
filled out documents necessary to reflect the change to Mr. Beyer’s account. Niemeier completed
the following documents: (1) a new account card which reflected the name of the account as “Maria
Alicia Beyer or Federico V. Beyer JTWROS”


; (2) a check-writing authorization form; (3) a request
for taxpayer identification number and certification, which is a substitute for IRS W-9 form; and (4) 
a letter of authorization which reflected a change in ownership of the account from “Federico V.
Beyer” to “Maria Alicia Beyer or Federico V. Beyer JTWROS.” Niemeier denied discussing how
the joint account would be held and he listed the account as joint tenancy with right of survivorship
“out of habit” since most joint accounts are opened as JTWROS. Beyer, on the other hand, testified
that Niemeier explained to her what joint tenancy with right of survivorship meant and Niemeier set
up the account in this manner based on his discussions with Mr. Beyer. 
            At Niemeier’s request, Beyer completed and signed a certificate of alien claiming residence
in the United States. She also signed the request for taxpayer identification number. AGE’s
document system


 reflects that the three documents signed by Beyer in AGE’s office (the new
account card, the certificate of alien claiming residence, and the request for taxpayer identification
number) were entered into AGE’s document system on December 13, 2000 and were scanned in
St. Louis on December 20.
            Beyer took three documents with her to obtain her father’s signature: (1) the letter of
authorization form; (2) the check-writing authorization; and (3) the joint account agreement. Beyer
and her father signed the documents in the presence of Mr. Beyer’s housekeeper, Nora Aldaba. 
Mr. Beyer discussed the documents with Beyer and understood that he was creating a joint account
with her. Aldaba confirmed that Beyer returned from AGE with three documents but Aldaba could
not read them because they were in English. Aldaba heard Beyer explain to Mr. Beyer that the effect
of the documents was to transfer the account to Beyer. Over AGE’s objections, Beyer specifically
testified that it was Mr. Beyer’s intent to create a joint tenancy with right of survivorship. Beyer did
not make copies of the documents because she expected Niemeier to make copies for her, and she
placed all three of them in an envelope and put it in her briefcase to return to AGE later that day. 
Shortly after 3:30 that afternoon, Beyer stopped at AGE and Aldaba carried the envelope inside. 
Aldaba asked for Niemeier but since he had already left the office, she left the envelope with the
receptionist.
            Beyer went to AGE about a week later to determine whether the joint account had been
approved. At first, Niemeier could not find any of the documents returned by Beyer on December 8,
but he then found them at the front desk and showed them to her. He advised Beyer that it would
take a couple of days to process them. Sometime prior to December 18, Beyer received a telephone
call from Niemeier advising that she had not signed the IRS W-9 form. He mailed her a new one
and she signed it and returned it to AGE on December 18, 2000. 
            Niemeier recalled the events differently. He had forgotten Beyer had signed an IRS W-9
form on December 8, so he mailed her the second one. When Beyer called on December 18 and
asked when she could begin writing checks on the account, Niemeier explained that she could begin
writing checks as soon as she returned the documents. Beyer explained that she had already returned
them. Niemeier called the main office in St. Louis and was told that they had not received the check-writing authorization, but he did not inquire about the joint account agreement or the letter of
authorization. Niemeier then found a check-writing authorization document which had been
received in his office that same day, December 18, 2000.


 Niemeier called Beyer and informed her
that he had the check-writing authorization. AGE’s document system reflects that the second IRS
W-9 form (dated December 18), the check-writing authorization (dated December 8), and the letter
of authorization (dated December 8) were entered into the document system in El Paso on
December 18 and were scanned in St. Louis on December 21, 2000. A joint account agreement was
never entered into the AGE document system in El Paso and was not located in either the El Paso
branch office or the main office St. Louis. Ordinarily, when a joint account agreement is missing,
the AGE computer system automatically sends a wire to the branch office ten days after the account
is opened. A wire was sent to the El Paso office on December 27 notifying them that the joint
account agreement was missing, but Niemeier apparently did not read the wire. That same day, AGE
sent a letter to Mr. Beyer stating:
This will confirm that we received and are processing your request to transfer assets
from your account according to your written instructions, a copy of which is attached. 
If the transfer is correct you do not need to do anything . . . . 

Attached to the letter was a copy of the letter of authorization, dated December 8, 2000, reflecting
Mr. Beyer’s requested change of ownership to the account with a right of survivorship. On
December 29, the St. Louis office generated a delinquent document report regarding the missing
joint account agreement but it was not received by the El Paso branch prior to the time Mr. Beyer
lapsed into a coma on December 31, 2000. He never regained consciousness and died intestate on
January 9, 2001. 
            Prior to Mr. Beyer’s death, Beyer wrote checks on the joint account to pay Mr. Beyer’s
medical bills and those checks were honored. Near the end of December, Beyer received a statement
from AGE reflecting the name on the account as Maria Alicia Beyer and Federico V. Beyer, joint
tenants with right of survivorship. Approximately two weeks after her father’s death, Beyer went
to AGE and asked Niemeier to close the joint account and open an account in only her name. She
signed a letter of authorization requesting a transfer of the funds to an individual account. In early
February, Niemeier called Beyer and informed her that there was a problem with the account because
one of the documents was missing. He assured her they would look for it but asked that she not
write any more checks on the account. At a later date, Niemeier later called Beyer to inform her they
could not find the joint account agreement. On March 23, 2001, AGE notified Beyer by letter that
it did not have a signed joint account agreement on file for the account, and therefore, it could not
be determined whether the account was joint tenancy with right of survivorship, tenancy in common,
or tenancy of the entireties. AGE froze the account until ownership of the account could be
determined and advised Beyer that if ownership could not be ascertained, it would interplead the
assets into court. Beyer filed a negligence suit against AGE and Niemeier on May 4, 2001. Almost
two years later, on February 11, 2003, AGE deposited the account funds in the amount of
$1,185,807.24 in federal court in El Paso. AGE deposited an additional $916.01 on June 6, 2003
for a total of $1,186,723.25. Beyer’s five siblings disputed her claim to the balance of the account. 
Due to the absence of the joint account agreement indicating joint tenancy with right of survivorship,
Beyer entered into an agreement with her siblings that the funds would pass to each of the six heirs
equally. Consequently, each heir, including Beyer, received $197,787.21. 
            Beyer amended her suit against AGE and Niemeier to allege conversion, negligence, fraud,
negligent misrepresentation, breach of contract, and breach of fiduciary duty. She sought damages
of $988,986.04, representing the difference between the amount she actually received and the
amount she would have received had the defendants properly set up the account as joint tenancy with
right of survivorship. Beyer subsequently non-suited her claims against Niemeier. The jury found
in favor of Beyer on all six theories of liability submitted, including breach of contract, and awarded
damages in the amount of $791,200.


 In connection with the breach of contract claim, the jury also
awarded attorney’s fees: for preparation and trial--$225,000; for appeal to the Court of Appeals--$23,000; and for appeal to the Supreme Court of Texas--$25,000. Beyer elected to recover under
her contract cause of action and the trial court entered judgment based on the jury’s verdict. 
EXTRINSIC EVIDENCE OF INTENT
TO CREATE A RIGHT OF SURVIVORSHIP

            In its first issue, AGE contends the trial court improperly admitted and gave probative value
to extrinsic evidence of Mr. Beyer’s intent to create a joint tenancy with right of survivorship. At
trial, AGE objected that the evidence was barred by Section 439(a) of the Texas Probate Code, the
parol evidence rule, and Rule 601(b) of the Texas Rules of Evidence. AGE also objected to the
evidence as hearsay. The trial court overruled these objections and rejected AGE’s request for a
limiting instruction.



Section 439(a)
            AGE first argues that extrinsic evidence of Mr. Beyer’s intent to create a joint tenancy with
right of survivorship is prohibited by Section 439(a) of the Texas Probate Code. 
(a) Sums remaining on deposit at the death of a party to a joint account belong to the
surviving party or parties against the estate of the decedent if, by a written agreement
signed by the party who dies, the interest of such deceased party is made to survive
to the surviving party or parties. Notwithstanding any other law, an agreement is
sufficient to confer an absolute right of survivorship on parties to a joint account
under this subsection if the agreement states in substantially the following form: ‘On
the death of one party to a joint account, all sums in the account on the date of the
death vest in and belong to the surviving party as his or her separate property and
estate.’ A survivorship agreement will not be inferred from the mere fact that the
account is a joint account. 

Tex.Prob.Code Ann. § 439(a)(Vernon 2003).
            The Texas Supreme Court has held that the written agreement described in Section 439(a)
is the exclusive means of creating a JTWROS. Stauffer v. Henderson, 801 S.W.2d 858, 862-64
(Tex. 1990). In its absence, extrinsic evidence of the decedent’s intent to create a JTWROS is
inadmissible to prove rights of survivorship. Id. at 865. The statute’s prohibition against extrinsic
evidence applies only to a claim of survivorship being made “against the estate of the decedent.” 
See Tex.Prob.Code § 439(a). Further, Section 437 of the Probate Code provides:
The provisions of Sections 438 through 440 of this code that concern beneficial
ownership as between parties . . . are relevant only to controversies between these
persons and their creditors and other successors.

Tex.Prob.Code Ann. § 437.
            It is undisputed that Section 439 governs beneficial ownership as between parties. See
Stegall v. Oadra, 868 S.W.2d 290, 291 n.3 and 292 (Tex. 1993)(noting that Section 439 governs
beneficial ownership upon the death of a party to the account). Because AGE is not a “party” to the
joint account between Beyer and Mr. Beyer, and it is not a creditor or successor, Beyer argues that
Section 439(a)’s prohibition of extrinsic evidence is inapplicable. In response to this argument, AGE
cites three cases in which Section 439 has been applied to cases involving financial institutions. As
we will explain, none of the three is applicable here.
            In MBank Corpus Christi, N.A. v. Shiner, 840 S.W.2d 724 (Tex.App.--Corpus Christi 1992,
no writ), the heirs of a joint account holder brought a breach of contract claim against MBank
because it paid the account funds to the joint account holder after the death of the other joint account
holder. The contract for the account did not designate it a joint tenancy with a right of survivorship. 
The funds were withdrawn on the same date that the heirs filed a death certificate with the bank. Id.
The heirs alleged that pursuant to Section 439(d) of the Probate Code, the funds in the account
became their property upon the decedent’s death and the bank was liable to them for paying the
funds to the joint account holder. The trial court denied MBank’s motion for summary judgment and
granted summary judgment in favor of the heirs. The court of appeals reversed and rendered
judgment in favor of MBank, holding that MBank paid the funds to the joint account holder in
accordance with Section 445 of the Probate Code.


 Id. at 726-27. Since the heirs did not instruct
MBank in writing that it should not allow the joint account holder to withdraw the funds, MBank
was protected from liability by virtue of Section 448 of the Probate Code.


 Id. MBank is
distinguishable. The court of appeals actually applied sections 445 and 448 and only tangentially
mentioned Section 439(a) in stating that there was no joint right of survivorship created by a written
agreement. Contrary to AGE’s claim, Section 439(a) was not applied in favor of the financial
institution.
            In Parker v. J.P. Morgan Chase Bank, 95 S.W.3d 428 (Tex.App.--Houston [1st Dist.] 2002,
no pet.), the decedent opened two investment accounts at the bank. The account receipts indicated
that the accounts were payable on death (P.O.D.) and described Parker as the primary beneficiary. 
The decedent did not sign the written agreement to establish a P.O.D. account. Following the
decedent’s death, Parker attempted to collect the proceeds of the two accounts but was instructed that
she was required to furnish a copy of the death certificate. Before Parker returned, the executrix
delivered letters testamentary to the bank, withdrew the proceeds, and closed the accounts. Initially,
the bank believed the funds had mistakenly been paid to the executrix and it filed an action to
recover the funds. Upon discovering that the P.O.D. agreement had not been signed, the bank non-suited its action against the executrix. Parker then sued the bank to recover the funds. The bank
moved for summary judgment on the ground that the decedent failed to sign the required P.O.D.
agreement. Parker relied on the bank’s judicial assertions that a P.O.D. account had been created to
resist summary judgment. The trial court granted summary judgment for the bank. The court of
appeals affirmed, holding that it could not consider the bank’s judicial assertions because Section
439(a) required it to look exclusively at the P.O.D. agreement to discern whether a P.O.D. account
had been created. Parker, 95 S.W.3d at 431. This case is also distinguishable. First, Parker did not
raise the argument regarding Section 437. Of more significance, Parker asserted ownership of the
funds and alleged that the financial institution had wrongfully paid the funds to someone else. In
contrast, Beyer does not allege that she owns the funds or that AGE paid the funds to the wrong
person and she has not attempted to prove that the new account card or other documents are
sufficient to constitute a written agreement establishing a right of survivorship. In fact, she concedes
that AGE could not lawfully pay the funds to her because it lost the joint account agreement which
would have established a right of survivorship. For that reason, she entered into an agreement with
her siblings to divide the account funds in the manner required by law. Beyer instead alleges that
AGE, by losing the agreement signed by both Mr. Beyer and herself, breached its agreement to create
a joint account between Mr. Beyer and Beyer with a right of survivorship. As a result of that breach,
Beyer could not assert ownership in the funds and suffered monetary damages. 
            Finally, AGE cites Presslar v. Lytle State Bank, 982 S.W.2d 561 (Tex.App.--San Antonio
1998, no pet.) as another example where Section 439(a) has been applied in a case involving a
financial institution. There, a bank filed a declaratory judgment action to determine whether funds
in an account were owned by the estate of the deceased or by a family friend who was a signatory
on the account. A jury found that an “x” found in a box labeled “Joint--With Survivorship” on the
signature card was not placed on the signature card by the decedent or with his consent and the court
entered judgment declaring the funds to be the property of the estate. The court of appeals held that
Section 439(a) requires a party to introduce a written agreement signed by the deceased joint account
party in order to establish that an account was a joint account with right of survivorship. Id. at 564. 
The court of appeals found the evidence sufficient and affirmed the judgment. Id. at 565. Like the
Parker case, the central dispute in this case was ownership of the funds in the account. Beyer does
not allege that she owned the funds in the account. Therefore, the case is inapplicable. Applying
Section 437 to this unique dispute, we hold that AGE is not permitted to use Section 439(a) as a
shield to Beyer’s contract and tort claims. 
Parol Evidence
            AGE next contends that the evidence of Mr. Beyer’s intent is inadmissible because it violates
the parol evidence rule. This rule provides that, in the absence of fraud, accident, or mistake,
extrinsic evidence is not admissible to vary, add to, or contradict the terms of a written instrument
that is facially complete and unambiguous. National Union Fire Insurance Company v. CBI
Industries, Inc., 907 S.W.2d 517, 521 (Tex. 1995). The parol evidence rule applies only to
contractual writings evidencing the creation, modification, termination or securing of a particular
right or obligation. Gannon v. Baker, 818 S.W.2d 754, 755-56 (Tex. 1991). AGE complains that
the trial court allowed evidence of the contractual writing creating an account with rights of
survivorship. Beyer responds that since the written joint account agreement has been lost, the parol
evidence rule is inapplicable. She maintains that the “lost document” rule governs admission of this
evidence. Where a written, signed contract is lost or destroyed, its existence and terms may be
shown by clear and convincing parol evidence. See Bank of America, N.A. v. Haag, 37 S.W.3d 55,
58 (Tex.App.--San Antonio 2000, no pet.); EP Operating Co. v. MJC Energy Co., 883 S.W.2d 263,
267 n. 1 (Tex.App.--Corpus Christi 1994, writ denied).
            In Bank of America v. Haag, Thomas Haag opened a “trustee type account” at University
Savings for his son’s future education. Haag was the only signatory on the account and he was told
that his son could not withdraw any money from it without Haag’s signature. University Savings
went into receivership and NCNB purchased its assets. NCNB changed its name to NationsBank
and later to Bank of America. All of University Saving’s records were converted into Bank of
America’s records. During this process, Bank of America did not input the information into its
system from the signature cards but instead relied on information reported to it by University
Saving’s system. For unknown reasons, NationsBank changed the name on the account to read “Eric
J. Haag or Thomas P. Haag” but Eric never signed an authorization/signature card for the account. 
Bank of America permitted Haag’s son to withdraw all of the money in the account because the bank 
showed it as a joint account. Haag brought various causes of action against the bank. The trial court
found in favor of Haag. On appeal, the bank argued that the account statements sent to Haag
showing the name on the account as “Eric J. Haag or Thomas P. Haag” constituted an unambiguous
written agreement which the parol evidence rule prohibits from being contradicted or varied by
extrinsic evidence. The court of appeals held that the account statements did not evidence the
creation of the account but were a record of information transferred to the bank’s system and were
not the operative legal document that created the account. Haag, 37 S.W.3d at 58. Since the
signature card which evidenced the terms of the agreement between University Savings and Haag
was not admitted into evidence, the trial court did not err in admitting Haag’s testimony regarding
the terms of the account. Id.
            AGE seeks to distinguish Bank of America v. Haag by arguing that, unlike the present case,
there is no statute requiring a written agreement to establish the type of account. Regardless of
whether a written agreement was statutorily required, a written agreement did exist in Haag but was
not produced at trial. Consequently, Haag was permitted to establish the terms of the written
agreement, i.e., the signature card, by clear and convincing parol evidence. Applying the “lost
document” rule to the instant case, the jury impliedly found that AGE lost the joint account
agreement. Thus, Beyer is permitted to prove the terms of the agreement by clear and convincing
evidence.


 
            Even if AGE is correct that the “lost document” rule does not apply, there are other reasons
the parol evidence rule is inapplicable. The jury found that AGE agreed to open a joint account for
the Beyers as a JTWROS and that it breached the agreement . AGE’s agreement to open the account
for the Beyers is reflected in the various documents admitted at trial, including the new account card. 
The evidence supports a conclusion that AGE breached the agreement by failing to secure the joint
account agreement, particularly after being placed on notice by the main office that it was missing. 
The agreement which AGE breached was not the lost joint account agreement, but rather the
agreement to open a joint account with rights of survivorship. Under this view of the evidence and
the jury’s findings, AGE’s complaint that Beyer offered parol evidence to vary or contradict the
terms of the joint account agreement is without merit. For all of the foregoing reasons, the trial court
did not abuse its discretion in overruling objections to extrinsic evidence of the terms of the joint
account agreement and Mr. Beyer’s intent to create a joint account with right of survivorship. Issue
One is overruled.
EFFECT OF BEYER’S AGREEMENT
TO DIVIDE FUNDS WITH SIBLINGS
            In Issue Two, AGE asserts that Beyer effectively waived her causes of action against it by
agreeing to divide equally with her siblings the funds which AGE had interpleaded in federal court. 
It argues that Beyer voluntarily gave up the funds which she now seeks from AGE. AGE also
contends that Beyer failed to prove that, as the administrator of Mr. Beyer’s pending estate in
Mexico, she could not obtain a ruling from the Mexican probate court that she is entitled to all of
the funds.
            Waiver is the intentional relinquishment of a known right or intentional conduct inconsistent
with claiming that right. Tenneco Inc. v. Enterprise Products Co., 925 S.W.2d 640, 643 (Tex. 1996); 
Labrado v. County of El Paso, 132 S.W.3d 581, 594 (Tex.App.--El Paso 2004, no pet.). Because
waiver is an affirmative defense, the defendant bears the burden of pleading and proving it. 
Tex.R.Civ.P. 94; Labrado, 132 S.W.3d at 594. The elements of waiver include the following: (1)
existing right, benefit, or advantage; (2) actual or constructive knowledge of its existence; (3) an
actual intent to relinquish the right (which can be inferred from the conduct). Tenneco, 925 S.W.2d
at 643. Ordinarily, the issue of waiver is a question of fact. Id. Where facts are clearly established
and are undisputed, however, waiver becomes a question of law. Id.
            In order to establish its waiver defense, AGE had the burden to prove that Beyer had a right
to all of the funds in federal court; (2) Beyer knew she could prove her entitlement to those funds;
and (3) she intended to relinquish that right by sharing the funds with her siblings. But the absence
of the joint account agreement legally precluded Beyer from asserting ownership of the funds against
her siblings as heirs of her father’s estate.


 Consequently, Beyer’s agreement to share the funds with
her siblings does not operate as an intentional waiver of a known right. 
            With respect to the claim that Beyer failed to assert her rights in the Mexican probate court,
AGE, not Beyer, had the burden to prove that under Mexican law, Beyer was entitled to all of the
account funds. AGE is also charged with proving Beyer knew she could establish her entitlement
to all of the account funds under Mexican law, and with this knowledge, she instead chose to share
the funds with her siblings. AGE cites to no evidence in the record conclusively proving these
elements. Further, it has not provided any authority demonstrating that Beyer was entitled to the
account funds under Mexican law. Issue Two is overruled.
ATTORNEY’S FEES
            AGE’s final two issues relate to the attorney’s fee awards. In Issue Three, AGE complains
that because Beyer failed to segregate attorney’s fees between her tort and contract causes of action,
she is not entitled to attorney’s fees as a matter of law. It argues the jury’s award of $225,000 for
preparation and trial should be reversed and remanded for a determination of the amount attributable
to the contract cause of action.
            Beyer was entitled to recover attorney’s fees on her contract claim pursuant to
Tex.Civ.Prac.&Rem.Code Ann. § 38.001 (Vernon 1997). Attorney’s fees are not recoverable in
tort actions. Z.A.O. Inc. v. Yarbrough Drive Center Joint Venture, 50 S.W.3d 531, 550 (Tex.App.--El Paso 2001, no pet.). As a general rule, a party seeking attorney’s fees must show that the fees
were incurred on a claim that allows recovery of such fees, and thus is ordinarily required to
segregate fees incurred on claims allowing recovery of fees from those that do not. Stewart Title
Guaranty Company v. Aiello, 941 S.W.2d 68, 73 (Tex. 1997); Stewart Title Guaranty Company v.
Sterling, 822 S.W.2d 1, 10 (Tex. 1991). Segregation is not required, however, if the claims arise out
of the same transaction and are so interrelated that their prosecution or defense requires proof or
denial of essentially the same facts. Sterling, 822 S.W.2d at 11; Z.A.O., 50 S.W.3d at 550. When
causes of action involved in a suit are dependent upon the same set of facts or circumstances and
thus are intertwined to the point of being inseparable, the party suing for attorney’s fees may recover
the entire amount covering all claims. Sterling, 822 S.W.2d at 11. The determination of whether
attorney’s fees can be segregated between various claims or defenses is a question for the court. 
Aetna Casualty & Surety v. Wild, 944 S.W.2d 37, 41 (Tex.App.--Amarillo 1997, writ denied).
            Our review of the record indicates that the same transaction gives rise to all of Beyer’s claims
which were contingent upon proof of the same fact: an agreement between the parties that the
account would be opened and maintained as a joint tenancy with rights of survivorship. The factual
basis for the contract claim is inseparably intertwined with Beyer’s tort claims. Beyer’s contract
claim is based on evidence that AGE agreed to open a joint account with rights of survivorship but
failed to do so, resulting in damages to Beyer. AGE’s agreement to open the joint account with
rights of survivorship gives rise to its duty to exercise reasonable care to open and maintain the
account as agreed. AGE’s promises which formed the basis of the contract are the same
representations upon which Beyer relied, giving rise to her fraud and negligent misrepresentation
causes of action.
            AGE also takes issue with the attorney’s fees award because it included time and fees
expended in the federal interpleader action. Beyer’s attorney’s fees expert, Mark Pierce, testified
that the two proceedings were related. When AGE interpleaded the account funds, it sought both
interpleader relief and injunctive relief against the state court proceeding. AGE then sought
abatement of the state court proceeding based on the interpleader action. The federal court
subsequently determined that AGE was not entitled to interpleader relief and dismissed the
interpleader action, yet it did not award attorney’s fees to Beyer because the court agreed with AGE’s
argument that Beyer had already been awarded attorney’s fees in the state court proceeding. After
reviewing the record, we conclude that the trial court did not err in determining that Beyer’s contract
claims were inextricably intertwined with her tort claims. See Pegasus Energy Group, Inc. v.
Cheyenne Petroleum Company, 3 S.W.3d 112, 131 (Tex.App.--Corpus Christi 1999, pet. denied)
(holding segregation of attorney’s fees not required because contract, fraud, negligent
misrepresentation, and fraud in the inducement claims arose from same transaction and entailed
proof of same facts). Issue Three is overruled.
            In Issue Four, AGE argues that the judgment is incorrect because it makes an unconditional
award of appellate attorney’s fees to Beyer. We agree. A trial court may not grant a party an
unconditional award of appellate attorneys’ fees. Texas Farmers Insurance Company v. Cameron,
24 S.W.3d 386, 400 (Tex.App.--Dallas 2000, pet. denied); Humble National Bank v. DCV, Inc., 933
S.W.2d 224, 236 (Tex.App.--Houston [14th Dist.] 1996, writ denied). To do so could penalize a
party for pursuing a meritorious appeal. Texas Farmers Insurance Company v. Cameron, 24 S.W.3d
at 400. Issue Four is sustained. We modify the judgment to condition the appellate attorney’s fees
on an unsuccessful appeal by AGE. The judgment, as so modified, is affirmed.

June 30, 2005                                                              
                                                                                    ANN CRAWFORD McCLURE, Justice

Before Barajas, C.J., McClure, and Chew, JJ.