Lawrence MADEKSHO, Appellant,

v.

ABRAHAM, WATKINS, NICHOLS & FRIEND, and the Law Office of Robert E. Ballard, P. C., Appellees.

No. 14–98–01462–CV.

Court of Appeals of Texas, Houston (14th Dist.).

March 15, 2001.

Rehearing Overruled May 10, 2001.

Warren W. Harris, Tracy C. Temple, Eugene A. Cook, Houston, for appellants.

Don Weitinger, Houston, for appellees.

Panel consists of CANNON, DRAUGHN, and LEE, JJ.*

## OPINION

BILL CANNON, Justice (Assigned).

Lawrence Madeksho appeals from a summary judgment in favor of appellees for attorney's fees due under an oral fee-splitting agreement. In four issues, or points of error, appellant contends: (1) the trial court erred in granting appellees' motion for partial summary judgment; (2) the trial court erred in denying appellant's motion for summary judgment; (3) the trial court erred in granting appellees' summary judgment because they had no right to attorney's fees under the September 13, 1995 letter agreement; and (4) appellees forfeited their rights to attorney's fees because they abandoned their clients by withdrawing from their cases in 1995 without just cause. We affirm.

## FACTUAL BACKGROUND

In the 1970's, appellee Robert E. Ballard (Ballard) was a member of the law firm of Kronzer, Abraham, Watkins, Nichols, Ballard & Friend, the predecessor to appellees' law firm of Abraham, Watkins, Nichols & Friend (AWN & F). Appellant and Ballard entered into an oral fee-splitting arrangement whereby each attorney would receive fifty percent (50%) of the attorney's fees collected in asbestos injury claims. Appellant referred most of his injured clients to Ballard, and Ballard did most of the legal work for these clients.

---

* Senior Justices Bill Cannon, Joe L. Draughn, and Norman Lee sitting by assignment.

Appellant and Ballard worked together for seventeen years on this oral fee-splitting agreement without any problems.

In May 1994, appellant and Ballard reached a settlement with Fibreboard Corporation (Fibreboard) for about two hundred asbestos claimants. A settlement agreement dated May 31, 1994, was signed by Fibreboard and Continental Casualty Company (Continental), as the defendants, and "Law Offices of Lawrence Madeksho and Abraham, Watkins, Nichols, Ballard & Friend as Representative (the "Representative") for itself and on behalf of all the asbestos personal injury and death claimants who filed claims against Fibreboard before August 27, 1993." Appellant signed the agreement "as representative of the claimants."

The pertinent portions of the settlement agreement provided:

2.1 Fibreboard, Continental and Claimants, by and through the Representative, agree to compromise and settle, *finally and fully,* each and all of the claims of each and all of the Claimants on the following terms and conditions. In addition to other good and valuable consideration, the receipt and adequacy of which are confirmed by Claimants, Fibreboard and Continental agree to pay as follows (emphasis added).

\* \* \* \* \*

2.4 The amounts due on Before 1959 claims will be paid and distributed as follows.

(a) Payment of non refundable 50% cash component to Claimants with Before 1959 Claims.

Continental will pay 50% of the amounts set forth in Section 2 [listing names and settlement amounts for individual claimants] in two cash payments.

The first 50% payment was paid by Continental as set out in the settlement agree-ment. Appellant and appellees split the attorney's fees according to their long-standing oral agreement. The second payment is the subject of this lawsuit. The agreement refers to the second payment as the "Deferred Principal Component." The agreement provides that Continental shall pay the second payment "subject to the limitations set forth" in the agreement. The "limitations" described the manner of payment by Continental and/or Fibreboard in the event of (1) a "Global Settlement" or (2) an "Insurance Settlement" or a "Final Decision" in pending litigation between Fibreboard and Continental concerning Continental's obligations to Fibreboard on its liability insurance policy.

If a "Global Settlement" (a class action settlement of national scope to which Fibreboard and Continental are parties) occurred first, Continental would pay all of the second payment. If Continental and Fibreboard settled their difficulties, then both had an *unconditional obligation* to pay the claims according to the "Insurance Settlement." In the absence of a "Global Settlement" or and "Insurance Settlement," both Continental and Fibreboard had an *unconditional obligation* to pay the claimants according to the "Final Decision" disposing of all litigation pending in all asbestos coverage cases between Fibreboard and Continental.

The settlement agreement provided that any amounts due would be paid to the Representative [appellant] "as Trustee as defined in the Trust Agreement, attached hereto as Exhibit F." The parties were required to furnish releases of their clients' claims to Fibreboard and Continental before payments would be made.

On September 13, 1995, Ballard wrote a letter to appellant indicating that he and his law firm were withdrawing from "future involvement in the asbestos litiga-

tion." The pertinent portions of the letter provide:

I think it would be a good idea to put down on paper our discussions concerning this firm's future involvement in the asbestos litigation. As I told you, I have become convinced that this litigation is, if not a losing proposition, then certainly it is not a profitable one. In short, I want out of these lawsuits as soon as possible. I recognize that there are some cases that came to this firm and that you may not want to deal with them. I will deal later in this letter with them.

Our withdrawal, of necessity, requires notification to the clients and filing of pleadings in the various courts authorizing the substitution of counsel. There will be no continuing interest in each others cases except as stated in this letter. I am drafting a letter to the clients and will get your input before it goes out. Also, I will prepare all pleadings for filing with the various courts but they will need your signature of approval.

If the remainder of the Fibreboard settlement materializes, I will be glad to assist in closing it out. The Malone group is still on appeal and we will do whatever is necessary to protect the rights in these cases. We would expect our portion of the fee from these cases. Also, the Dartez group and the Sturdivant cases are still pending regarding Fibreboard. We would expect to help finalize those, if and when they mature, at the existing arrangement. You will also assist in finalizing any of my cases with Fibreboard if settlements with Fibreboard ever mature.

\* \* \* \*

On the remaining cases that originated in your office, we would expect no fee providing we can get the withdrawal

effected and the files transferred back to you. I understand that you are looking for storage space to take care of the files. Please let me know when you get it so we can transfer the files.

Appellant refused to sign the letter indicating his acceptance. In his deposition, Appellant testified that the "letters were somewhat ambiguous, and still are. That's the reason I didn't sign that." Appellant received the second payment on April 21, 1997, pursuant to the *previous* Fibreboard settlement agreement. Appellant refused to pay appellees their 50% of the attorney fees of over $1,000,000.00, and appellees filed this lawsuit.

## THE PARTIAL SUMMARY JUDGMENT FOR APPELLEES

In his first issue, appellant contends that the trial court erred in granting summary judgment for the appellees based on the September 13, 1995, letter agreement from Ballard withdrawing from further asbestos litigation. Appellant argues that Ballard's letter terminated the previous oral fee-splitting agreement between Ballard and appellant and created the parties' new agreement.

### Procedural History

Appellant filed his motion for summary judgment claiming: (1) by withdrawing from the litigation in September 1995, appellees abandoned their clients and forfeited all right to compensation; (2) the oral fee-splitting contract was unenforceable because it violated rule 1.04 of the Texas Disciplinary Rules of Professional Conduct concerning division of fees between lawyers; (3) Ballard was not a proper party; (4) appellees had no evidence to support their claims because they had no enforceable agreement between them; and (5) any

alleged contract was barred by the statute of frauds.

Appellees responded and then filed their motion for partial summary judgment on the grounds of breach of contract and breach of fiduciary duty as a joint venturer. Appellees also alleged that appellant's affirmative defenses failed as a matter of law, addressing appellant's defenses of accord and satisfaction, abandonment and forfeiture of attorney's fees, new agreement with respect to the second Fibreboard payment, acceptance of payment, and waiver and forfeiture. Appellant responded alleging that there was no contract and appellees "abandoned" their clients by withdrawing. He further argued that the fee-splitting arrangement was invalid because it was contrary to rule 1.04, Texas Disciplinary Rules of Professional Conduct. Appellant did not respond to appellees' motion for summary judgment on the grounds that each of appellant's affirmative defenses failed as a matter of law.

The trial court entered an order denying appellant's motion for summary judgment and granting appellees' motion for partial summary judgment on liability issues. Appellant then filed a motion for reconsideration which the court granted. On September 4, 1998, the trial court entered final judgment for appellees on their motion for partial summary judgment and awarded damages in the sum of $1,029,756.00 plus prejudgment and post-judgment interest. The final judgment also denied appellant's motion for summary judgment.

### Standard of Review

■ A movant for summary judgment has the burden of showing there is no genuine issue of material fact and that it is entitled to summary judgment as a matter of law. *Nixon v. Mr. Property Manage-*

*ment Co.,* 690 S.W.2d 546, 548–49 (Tex. 1985). In reviewing the summary judgment proof, evidence favorable to the non-movant is taken as true, with the court indulging all inferences and resolving all doubts in the nonmovant's favor. *Id.* When both parties move for summary judgment and one motion is granted and the other denied, an appellate court should determine all questions presented to the trial court, including whether the losing party's motion should have been overruled. *Jones v. Strauss,* 745 S.W.2d 898, 900 (Tex.1988). Each party must carry its burden to conclusively prove the essential elements of its cause of action or defense as a matter of law and neither can prevail because of the failure of the other to discharge that burden. *See Federal Deposit Ins. Corp. v. Attayi,* 745 S.W.2d 939, 946 (Tex.App.—Houston [1st Dist.] 1988, no writ); *The Atrium v. Kenwin Shops of Crockett, Inc.,* 666 S.W.2d 315, 318 (Tex. App.—Houston [14th Dist.] 1984, writ ref' n.r.e.). *See also Beck & Masten Pontiac GMC, Inc. v. Harris County Appraisal Dist.,* 830 S.W.2d 291, 294 (Tex.App.— Houston [14th Dist.] 1992, writ denied).

### Discussion

In issues one and three, appellant asserts that the trial court erred in granting appellees' partial motion for summary judgment by incorrectly interpreting Ballard's withdrawal from further litigation as not affecting appellees' right to a $^{50}/_{0}$ split of the attorney's fees due from the payment by Fibreboard of the second half of the 1994 settlement agreement. Appellant argues that the "trial court held that [appellees'] interpretation was the correct one as a matter of law."

■ Appellant's argument in his response to appellees' motion for partial summary judgment was that appellees' withdrawal from future litigation constitut-

ed an abandonment of their clients. For the first time on appeal, appellant asserts Ballard's September 13, 1995, letter was an "agreement" between Ballard and himself which "terminated the previous oral fee-splitting agreement between Ballard and Madeksho and created the parties' new agreement." Appellant did not present this defensive theory to the trial court in his response.

We do not consider on appeal grounds not raised in the trial court in opposition to a summary judgment motion. *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 676 (Tex.1979). By written answer or response to the motion, the nonmovant must fairly apprize the movant and the trial court of the issues the nonmovant contends should defeat the motion for summary judgment, though the nonmovant needs no answer or response to contend on appeal that the grounds expressly presented in the movant's motion are insufficient as a matter of law to support the summary judgment. *Id.* at 678. A nonmovant may not urge on appeal any and every new ground he can think of, nor can he resurrect grounds that he abandoned at the hearing. *Id.* We overrule appellant's contentions in issues one and three that the "letter agreement" created the parties' new agreement and the trial court erred by interpreting it in appellees' favor.

### The fiduciary duty claim

As a sub-issue to issue one, appellant asserts the trial court erred in granting appellees' motion for partial summary judgment on their joint venture claim. Appellant argues that there could not have been a joint venture after the "letter agreement" because appellees "would be entitled to share in Madeksho's attorney's fees only 'as stated in this letter.'" Appellant further argues that the "letter agree-

ment" terminated the previous oral fee-splitting agreement between Ballard and Madeksho and became the parties' new agreement.

This argument was not made to the trial court in appellant's response. We do not consider on appeal grounds not raised in the trial court in opposition to a summary judgment motion. *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d at 676.

Appellant further argues that appellees failed to establish as a matter of law that there was a joint venture, and that the evidence was disputed. Other than cite generally to six pages in the record where this contention could be demonstrated, appellant fails to provide any legal argument and authority to establish this contention.

This court is not required to search the record for evidence supporting appellants' position, and we refuse to do so. *See* Tex.R.App.P.38.1(g), (h); *Hall v. Stephenson*, 919 S.W.2d 454, 466–67 (Tex.App.—Fort Worth 1996, writ denied). Accordingly, we overrule appellant's contentions in his sub-issue to issue one.

### Withdrawal by Ballard as Abandonment of his Clients

In issue four, appellant contends the trial court erred in granting appellees' motion for partial summary judgment because they withdrew and abandoned appellant's clients. In his response, appellant cited *Staples v. McKnight*, 763 S.W.2d 914 (Tex.App.—Dallas 1988, writ denied) and *Royden v. Ardoin*, 160 Tex. 338, 331 S.W.2d 206 (1960) as authority for the proposition that an attorney forfeits his right to compensation by abandoning his client.

In the *Staples* case, Staples hired McKnight to represent him in prosecuting a suit for wrongful discharge from employment against his former employer, Rutishauser of America, Inc. *Staples*, 763 S.W.2d at 915–916. Staples and McKnight entered into an oral contingent fee agreement whereby McKnight would receive one-third of any recovery in the Rutishauser case after costs were deducted from the gross amount recovered. *Id.* McKnight performed various services for Staples in litigating the Rutishauser case until February of 1985. *Id.* At that time, Staples and McKnight had a disagreement concerning certain anticipated testimony that Staples might have been called upon to give in his upcoming oral deposition. *Id.* McKnight stopped performing services, and Staples hired another attorney who successfully settled the Rutishauser case. *Id.* McKnight then demanded that Staples pay her one-third of the settlement as her fee under the agreement. *Id.*

Citing *Royden v. Ardoin*, the court of appeals stated, "an attorney who abandons a case without just cause before completing the task for which his client hired him breaches his contract of employment and forfeits all right to compensation." *Royden*, 331 S.W.2d at 209; *Staples*, 763 S.W.2d at 916. In that case, the *Staples* court ruled that the "critical question, then, is did McKnight have just cause to withdraw." *Id.*

McKnight alleged that she voluntarily withdrew from the Rutishauser case when Staples indicated that he would deny responsibility for "turning in" Rutishauser to the IRS in his upcoming oral deposition. *Id.* McKnight considered this anticipated testimony to be untruthful. *Id.* The court of appeals found that McKnight produced no evidence to demonstrate that she had just cause to withdraw. *Id.* at 917.

■ The question in this case is: Did Ballard complete "the task for which his client hired him" before withdrawing? *Royden*, 331 S.W.2d at 209. Ballard produced evidence that his job was completed when all the parties signed the 1994 Fibreboard settlement agreement and his clients released all their claims as required by the terms of the agreement. Madeksho admitted in his deposition that he and Ballard had an agreement to split the fees generated from the settlements. The settlement agreement with Fibreboard was attached as a sealed exhibit to Ballard's motion for partial summary judgment. Madeksho admitted in his deposition that there was nothing left to do once the settlement agreement was signed and filed. Madeksho admitted he did nothing further on the case after the agreement was filed. Madeksho admitted that the check for the agreed second half payment came to him in the mail. The record shows that after the agreement had been filed with the trial court, and before Madeksho received the check in 1997, Ballard withdrew from *further* litigation.

Appellant has produced no summary judgment proof to show that Ballard had not completed his task for which he was retained in the 1994 settlement agreement before withdrawing from *further* litigation in 1995. Appellant claims that even without proof of causation or damages, he has shown that appellees breached a fiduciary duty owed to his clients. Therefore, he asserts that he was entitled to have a court order that appellees forfeit the attorney fees under the settlement agreement. *See Arce v. Burrow*, 958 S.W.2d 239, 251 (Tex. App.—Houston [14th Dist.] 1998) (op. on reh'g), *rev'd in part on other grounds*, 997 S.W.2d 229 (Tex.1999). Nevertheless, the summary judgment record contains no evidence establishing that appellees breached a fiduciary duty to appellants by abandonment. *See also Green v. Brantley*, 11

S.W.3d 259, 268 (Tex.App.—Fort Worth 1999, pet. denied).

■ Appellant's conclusory argument in his lengthy response to appellees' motion for partial summary judgment is not evidence. Pleadings do not constitute summary judgment evidence. *Hidalgo v. Surety Savings & Loan Association,* 462 S.W.2d 540, 545 (Tex.1971); *Nicholson v. Memorial Hosp. System,* 722 S.W.2d 746, 749 (Tex.App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.). A motion for summary judgment is a pleading. *Id.* Similarly, a response to a motion for summary judgment is a pleading. *Id.* Therefore, the references and conclusory opinions made by appellant in his response do not constitute summary judgment proof. We overrule appellant's contention in issue four that appellees abandoned their clients and are not entitled to compensation.

■ As a sub-point to issue four on abandonment, appellant argues for the first time on appeal that appellees violated rule 1.05, Texas Disciplinary Rules of Professional Conduct, concerning confidentiality of client information. This argument was not presented to the trial court. We do not consider on appeal grounds not raised in the trial court in opposition to, or in support of, a summary judgment motion. *City of Houston v. Clear Creek Basin Auth.,* 589 S.W.2d at 676. We overrule appellant's contention in issue four that appellees violated rule 1.05.

### The Denial of Appellant's Motion for Summary Judgment

■ In issue two, appellant contends that the trial court erred by denying his motion for summary judgment. In his motion for summary judgment, appellant stated as grounds: (1) by withdrawing from the litigation in September 1995, appellees abandoned their clients and forfeited all right to compensation; (2) the oral fee-splitting contract was unenforceable because it violated rule 1.04 of the Texas Disciplinary Rules of Professional Conduct concerning division of fees between lawyers; (3) Ballard was not a proper party; (4) appellees had no evidence to support their claims because they had no enforceable agreement between them; and (5) any alleged contract was barred by the statute of frauds. On appeal, appellant does not separately argue why the trial court erred in denying his motion for summary judgment. In a general point of error, he contends: "The trial court erred in granting [appellees'] motion for partial summary judgment on their breach of contract claim and in denying Madeksho's motion for summary judgment." Under this point, he again argues the trial court wrongly interpreted the "letter agreement" which we discussed under issues one and three. This was not presented to the trial court in his motion for summary judgment. Appellant does not conclusively establish any of the elements of any of his affirmative defenses. Accordingly, appellant has not preserved this complaint for review. We cannot raise points of error *sua sponte.* As the Texas Supreme Court recently reiterated, our task is to consider only those issues presented by the parties. *Walling v. Metcalfe,* 863 S.W.2d 56, 58 (Tex.1993). Appellant's contentions in issue two are overruled.

We affirm the judgment of the trial court.