**In re OLSHAN FOUNDATION REPAIR COMPANY OF DALLAS, LLC d/b/a Olshan Foundation Repair Company.**

No. 10–06–00025–CV.

Court of Appeals of Texas, Waco.

June 21, 2006.

Kimberly A. Elkjer, Robert M. Millimet, Scheef & Stone, L.L.P., Dallas, and Stephen E. Van Buren, Attorney At Law, Houston, for Appellant/Relator.

Angela E. Tekell, Tekell & Atkins, L.L.P., Waco, for Appellee/Respondent.

Before Chief Justice GRAY, Justice VANCE, and Justice REYNA.

## OPINION

PER CURIAM.

Jason and Jacqueline Seay sued Olshan Foundation Repair Company of Dallas for breach of warranty, DTPA violations, and negligence arising out of foundation repairs made by Olshan. After the trial court denied Olshan's motion to compel arbitration, Olshan now petitions us for a writ of mandamus,[1] citing the Federal Arbitration Act (FAA) and providing an evidentiary affidavit in support of the FAA's applicability. 9 U.S.C.A. §§ 1–16 (West 1999). Because Olshan admittedly (Relator's Petition at p. 20) did not invoke the FAA or raise its applicability in the trial court,[2] we deny the petition regarding Olshan's arbitration motion. *See In re Neatherlin Homes, Inc.,* 160 S.W.3d 82, 83 (Tex.App.-Waco 2004, orig. proceeding) (citing *In re L & L Kempwood Assoc., L.P.,* 9 S.W.3d 125, 127 (Tex.1999) (invok-

---

1. The Texas Arbitration Act provides for an interlocutory appeal of the denial of a motion to compel arbitration. TEX. CIV. PRAC. & REM. CODE ANN. § 171.098 (Vernon 2005). However, "[a] party denied the right to arbitrate under the Federal Arbitration Act by a state court has no adequate remedy by appeal and is entitled to mandamus relief to correct a clear abuse of discretion." *In re L & L Kempwood Assoc., L.P.,* 9 S.W.3d 125, 128 (Tex.1999) (orig.proceeding).

Olshan filed a direct interlocutory appeal of the trial court's denial of its motion, but Olshan voluntarily agreed to its dismissal. *See Olshan Foundation Repair Co. of Dallas, LLC v. Seay,* No. 10–06–00010–CV, 2006 WL 727758, at *1, 2006 Tex.App. LEXIS 2202, at *1 (Tex.App.-Waco Mar.22, 2006, no pet.) (mem.op.).

2. Olshan is correct that we may receive affidavits to ascertain matters of fact relevant to jurisdiction. *See* TEX. GOV'T CODE ANN. § 22.220(c) (Vernon 2004); *see, e.g., Jones v. Griege,* 803 S.W.2d 486, 488 (Tex.App.-Dallas 1991, no writ). But that is not what Olshan is attempting to do. Olshan's FAA argument raises a substantive legal theory (arbitrability under federal law) with supporting evidence that should have been, but was not, presented to the trial court. "We do not consider arguments in a petition for writ of mandamus which were not presented to the trial court." *In re Chu,* 134 S.W.3d 459, 463 (Tex.App. Waco 2005, orig. proceeding) (Gray, C.J.) (citing *In re American Optical Corp.,* 988 S.W.2d 711, 714 (Tex.1998) (orig.proceeding)). Notably, the dissent ignores this well-established principle in mandamus practice.

ing the FAA), and *In re American Optical Corp.*, 988 S.W.2d 711, 714 (Tex.1998) (raising argument in trial court)).

Olshan also asked the trial court to dismiss the Seays' claims under the Residential Construction Liability Act (RCLA) because the Seays allegedly failed to give Olshan proper pre-suit notice. *See* TEX. PROP.CODE ANN. §§ 27.001—.007 (Vernon Supp.2005). The trial court also denied that motion, and Olshan seeks mandamus on that ruling. The Seays point out: (1) neither the current RCLA nor its predecessor creates a cause of action that must be pled; (2) Olshan received adequate pre-suit notice from the Seays; (3) abatement, not dismissal, would be the proper remedy under RCLA; and (4) Respondent properly found that the pre-suit notice warranted denial of Olshan's motion to dismiss. We agree with the Seays; thus, we deny the petition seeking to require Respondent to dismiss the underlying suit.

For the above reasons, we deny Olshan's petition for writ of mandamus.

Justice VANCE concurring.

Chief Justice GRAY dissenting.

BILL VANCE, Justice, concurring.

I write separately to note that, even if the FAA had been invoked, in denying Olshan's motion to compel arbitration, Respondent could have found that no arbitration agreement existed or that Olshan's

foundation repair was done under a verbal agreement with Seay. *See In re Dillard Dept. Stores, Inc.*, —— S.W.3d ——, ——, 2006 WL 508629, at *1 (Tex. Mar.3, 2006) ("In reviewing findings of fact in a mandamus proceeding, we cannot substitute our judgment for that of the trial court."). Under the FAA, courts decide whether an arbitration agreement was ever concluded, *i.e.*, signed. *Buckeye Check Cashing, Inc. v. Cardegna*, —— U.S. ——, —— n. 1, 126 S.Ct. 1204, 1208 n. 1, 163 L.Ed.2d 1038 (2006). While Texas law expresses a strong presumption in favor of arbitration, the presumption arises only after the party seeking arbitration proves the existence of an arbitration agreement. *J.M. Davidson v. Webster*, 128 S.W.3d 223, 227 (Tex.2003). Courts interpret arbitration agreements under traditional state-law contract principles, which are also used to determine the formation of such contracts when deciding whether an arbitration agreement exists. *Id.* at 227–28 (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944, 115 S.Ct. 1920, 1924, 131 L.Ed.2d 985 (1995)).

In the trial court's December 15, 2005 evidentiary hearing on Olshan's motion to compel arbitration, the parties vigorously contested whether an arbitration agreement existed.[1] Olshan contended that an agreement with Scott Perrin (the prior homeowner) dated November 19, 2001 (the "Perrin bid") but signed only by Olshan salesman Shannon Kemp, contains the applicable arbitration agreement.[2] Olshan

---

1. *See In re Conseco Fin. Serv'g. Corp.*, 19 S.W.3d 562, 567–68 (Tex.App.-Waco 2000, orig. proceeding) (if party opposing arbitration claims there is no agreement to arbitrate, and if there are controverting facts, trial court must conduct evidentiary hearing to determine disputed facts before deciding if there is arbitration agreement).

2. Perrin testified by deposition that Olshan faxed the Perrin bid to his home computer within a couple of days of November 19, and

after a day or two, he signed it and drove to his realtor Jerry Cooley's office and faxed it to Olshan. Norma Boggs, the Seays' realtor, testified that Cooley did not have a fax machine at his realty office. Kemp, who is still with Olshan and who allegedly (a) negotiated with Perrin, (b) faxed the Perrin bid to Perrin, and (c) received by fax the Perrin bid with Perrin's signature, did not testify. Dawn Powers, Olshan's office manager, testified that she had never discussed the matter with

asserted for the first time at the December 15 hearing that both its copy and Perrin's copy of the Perrin bid with Perrin's signature had been lost or destroyed.[3] If a written and signed document is lost or destroyed, its existence and terms may be shown by clear and convincing evidence. *A.G. Edwards & Sons, Inc. v. Beyer*, 170 S.W.3d 684, 692–93 (Tex.App.-El Paso 2005, pet. filed).

But the Seays, who had agreed to purchase Perrin's home on November 14, 2001, contended that Perrin had nothing to do with the foundation repair work that was actually done; Jason Seay testified that Perrin told him that Perrin would not sign an agreement with Olshan and that Perrin would not pay for any of the foundation repair. Because the house had obvious foundation problems, the Seays' lender would not do a mortgage without an engineer's site plan that ensured the foundation could be repaired. The Seays' engineer inspected the house on November 21 and wrote a report with repair plans (calling for sixteen piers) dated November 26 that was faxed to Olshan by Norma Boggs on that date.[4] Olshan then prepared the Perrin bid dated November 19 for sixteen piers for $6,400 with the handwritten notation "bid per engineer report" (the engineer's report called for sixteen piers) and faxed it to Boggs on November 28, who in turn faxed it to the Seays on November 29.[5] Under the Seays' version of events, the Perrin bid could not have been in existence at the time Perrin says he received it, signed it, and faxed it (within a few days of November 19) to Olshan. This is why, the Seays contend, there is no available copy of the Perrin bid signed by Perrin—it never existed.[6] Respondent

Kemp and that her file did not reflect sending a fax to or receiving a fax from Perrin.

3. Olshan first argued its arbitration motion at a June 27, 2005 hearing on its motion to dismiss. That hearing eventually was continued because Olshan was not prepared to present evidence, but Olshan did not contend that Perrin had signed the Perrin bid and that it had been lost or destroyed.

4. Boggs, who corroborated the Seays' version of events, said that Cooley had set up Olshan's November 19 inspection of the Perrin house and that she attended the inspection with Cooley and Perrin (who did not remember Boggs's presence). Kemp, the Olshan salesman, gave Boggs originals of two November 19 bid agreements that Boggs brought to the hearing: one bid for fourteen piers for $5,300, and another bid for thirty-one piers for $13,950. Boggs said that after this initial November 19 meeting, Perrin had nothing at all to do with the Seays' dealings with Olshan or Olshan's foundation repairs.

5. Contrary to the notice in this bid that a warranty was attached, none was.

6. Even Perrin admitted that he stopped dealing with Olshan once the Seays began working with Olshan in late November or early December. Jason said he dealt with Olshan's Paul Wegman, who asked him to sign the Perrin bid, but based on his bankruptcy attorney's advice (the Seays were in the middle of a bankruptcy), Jason refused to sign it. Seay also refused Wegman's request for partial payment up front. Seay verbally agreed with Wegman to pay Olshan if it did the foundation repair work. Olshan started the work on February 27, 2002. The Seays' engineer visited on February 28 while Olshan was working, and because the repairs weren't being done according to his plans, the Seays wrote the realtors that day that the Seays would have to withdraw from buying the house if the foundation work did not meet their engineer's plans. Olshan stopped its work, but after the engineer met with Olshan, the work resumed on March 2. Under the engineer's revised plans, Olshan installed six additional piers (for a total of twenty-two piers for $8,400), and the work was completed on March 4. When the engineer told Seay that Olshan had completed the work, Seay paid Olshan by having Boggs hand-deliver Seay's $8,400 check to Olshan's Wegman on March 5, who signed a receipt for the check and promised a warranty would be mailed in two weeks. The sale of the house closed three days after Olshan had finished. Two weeks later, the Seays received from Perrin two identical Ol-

could have believed the Seays' version of these events and thus concluded that Olshan failed to meet its burden of proving by clear and convincing evidence that a signed version of the Perrin bid was lost or destroyed.[7]

Respondent could have further concluded that Olshan's foundation repair work was done under a verbal agreement between Seay and Olshan's Wegman and that the warranty was provided pursuant to that verbal agreement, independent of any alleged agreement between Perrin and Olshan. *See Edwards v. Schuh,* 5 S.W.3d 829, 832–33 (Tex.App.-Austin 1999, no pet.) (subsequent purchasers not required to arbitrate warranty claim against builder, where claim could be brought under express warranty contained in builder's letter independent from warranty in construction contract that contained arbitration clause). The Olshan warranty certificate itself does not refer to any other agreement or to arbitration.

Four witnesses testified at the hearing, and many exhibits were admitted into evidence. Much conflicting and contradictory evidence about the respective dealings between Perrin and Olshan and Seay and Olshan was presented to Respondent, who resolved the disputed fact issues against Olshan. *Cf. Dillard,* — S.W.3d at ——, 2006 WL 508629, at *1–3 (relator must establish that trial court could reasonably have reached only one decision; the evidence compelled a finding that employee agreed to arbitrate). An appellate court may not substitute its judgment on the facts for that of the trial court. *In re Republic Lloyds,* 104 S.W.3d 354, 357 (Tex. App.-Houston [14th Dist.] 2003, orig. pro-

ceeding); *In re Rangel,* 45 S.W.3d 783, 786 (Tex.App.-Waco 2001, orig. proceeding). In other words, an appellate court may not deal with disputed matters of fact in an original mandamus proceeding. *Republic Lloyds,* 104 S.W.3d at 357 (citing *Hooks v. Fourth Court of Appeals,* 808 S.W.2d 56, 60 (Tex.1991) (orig.proceeding), and *Brady v. Fourteenth Court of Appeals,* 795 S.W.2d 712, 714 (Tex.1990) (orig.proceeding)). Because Respondent resolved the disputed fact issues and an appellate court cannot, Olshan has not established its right to mandamus relief, and I would deny the petition on this basis as well.

TOM GRAY, Chief Justice, dissenting.

This dissenting opinion will be divided into two principal sections. The two sections will address the problems with the majority opinion and state what I consider to be a proper analysis of the issue.

PROBLEMS WITH THE MAJORITY OPINION

I will begin my analysis with the problems in, and the problems avoided by, the majority opinion. The majority opinion, to the casual reader, would appear uncontroversial and straightforward. It is neither.

The first thing the casual reader will not see, which is also a controversial part, goes to the core of our advocacy system.

The United States legal system has two very well-recognized concepts. The system is based upon judicial restraint. "We cannot raise points of error *sua sponte.* As the Texas Supreme Court recently reiterated, our task is to consider only those issues presented by the parties. *Walling v. Metcalfe,* 863 S.W.2d 56, 58 (Tex.1993)."

---

shan warranty certificates that Olshan had sent to Perrin.

**7.** This case is thus easily distinguishable from *In re McKinney,* which did not involve a dis-

pute over whether a signed agreement existed. *See In re McKinney,* 167 S.W.3d 833 (Tex.2005) (orig.proceeding).

*Madeksho v. Abraham, Watkins, Nichols & Friend,* 57 S.W.3d 448, 455 (Tex.App.-Houston [14th Dist.] 2001, pet. denied). "Historically, [the Texas Supreme Court] ha[s] used the term 'fundamental error' to describe situations in which an appellate court may review error that was neither raised in the trial court nor assigned on appeal. In light of [the Supreme Court's] strong policy considerations favoring preservation, [that Court] ha[s] called fundamental error 'a discredited doctrine.' " *In re B.L.D.,* 113 S.W.3d 340, 350 (Tex.2003), *cert. denied sub nom. Dossey v. Tex. Dep't of Protective & Reg. Servs.,* 541 U.S. 945, 124 S.Ct. 1674, 158 L.Ed.2d 371 (2004) (*B.L.D.* quoting *Cox v. Johnson,* 638 S.W.2d 867, 868 (Tex.1982) (per curiam)) (internal citations omitted); *but see Pena v. State,* 191 S.W.3d 133, 136 (Tex.Crim.App.2006) ("[A]ppellate courts are free to review 'unassigned error'—a claim that was preserved in the trial below but was not raised on appeal."). Generally, judges are limited to answering the question presented, and only the question presented. Another well-recognized concept is that the lawyers, as advocates for the parties, give their clients the advice and counsel that the lawyers believe is appropriate, and work with the clients to implement a litigation strategy. When they choose to forego a position, argument, or objection, it is forfeited or waived. This second concept has led to the rules regarding error preservation. *See* TEX.R.APP. P. 33.1.

Both of these core concepts are violated by the majority opinion. Justice Vance has identified what he has determined is an issue, found what he believes is controlling case authority, and made his argument to the other member of the Court, Justice Vance having found one who has agreed with his argument, and they have now voted that their answer to his issue is the correct one. I disagree. I disagree with both the procedure and the answer. By this procedure, he has implemented a trial/litigation strategy for a party without the party's request, deciding an issue the parties did not ask to have answered. I also think that the majority reached the wrong answer.

Specifically, the issue of whether the Federal Arbitration Act was "invoked" was not raised by either party. *See* Federal Arbitration Act, 9 U.S.C. §§ 1–16 (2000) ("FAA").[1] Thus, if that issue needed to be raised or otherwise were forfeited, it has been forfeited. Of course, if it has to be raised, that presumes that it must be raised by a party—not a member of an appellate court as has been done in this case.

But could it be one of those rare issues that we can raise on our own? If it is a jurisdictional issue, it could be that it is entirely proper for this Court to raise the issue of its jurisdiction. *Krumnow v. Krumnow,* 174 S.W.3d 820, 825 (Tex.App.-Waco 2005, pet. filed); *see M.O. Dental Lab v. Rape,* 139 S.W.3d 671, 673 (Tex. 2004). This is where and why I must address the result and specifically the case from this Court on which the majority relies.

In order for me to do this efficiently, the reader must understand that there is a procedural anomaly in Texas for obtaining relief from a trial court's refusal to order a case to arbitration. If the underlying dispute involves interstate commerce, the FAA controls the procedure. *See* 9 U.S.C. §§ 1–16. The procedure to obtain immedi-

---

**1.** If the application or non-application of the FAA is a substantive argument, as argued by the majority, (*see* majority op. n. 2), then it is all the more clear that the members of the majority have left their role in the judiciary and become advocates for a party, something they have improperly done before.

ate review of the trial court's refusal to order the case to arbitration under the FAA is by mandamus. The order denying a referral to arbitration is not a final order and, under the FAA, there is no right to an interlocutory appeal.

If the underlying dispute does not involve interstate commerce, the Texas Arbitration Act ("TAA") controls the procedure. *See* TEX. CIV. PRAC. & REM.CODE ANN. §§ 171.001–171.003, 171.021–171.098 (Vernon 2005). The procedure to obtain immediate review of the trial court's refusal to order the case to arbitration under the TAA is by direct appeal. *Id.* § 171.098(a)(1). Even though the order denying arbitration is not final, the TAA expressly provides the right to an interlocutory appeal. *See id.* Thus, a party cannot use a mandamus proceeding because, under the TAA, it has a remedy by direct appeal.

The case relied upon by the majority is *Neatherlin Homes*. *See In re Neatherlin Homes, Inc.*, 160 S.W.3d 82 (Tex.App.-Waco 2004, orig. proceeding). The concept *Neatherlin Homes* is cited for is:

> Because Olshan admittedly (Relator's Petition at p. 20) did not "invoke" the FAA or raise its applicability in the trial court, we deny the petition regarding Olshan's arbitration motion.

(Majority op. at 2 (internal footnote omitted).)[2] In *Neatherlin Homes*, we dismissed a mandamus proceeding, *not* because Neatherlin Homes did not invoke the FAA, but because Neatherlin Homes had sought relief from the trial court only under the TAA. Because Neatherlin Homes had only sought relief under the TAA, its avenue of relief for the trial court's failure to grant arbitration under the TAA was by way of direct appeal, not mandamus. *Neatherlin Homes* at 83. Because it had sought mandamus relief seeking to compel arbitration only under the TAA, it had, by the procedural vehicle it chose, deprived us of jurisdiction to grant any relief by mandamus.

So, with a little spin on the holding in *Neatherlin Homes*, the holding is flipped from invoking-only-the-TAA-deprives-us-of-mandamus-jurisdiction to equate to the-failure-to-invoke-the -FAA-deprives-us-of-mandamus-jurisdiction. The two are not equal.

Olshan never specifically invoked either the FAA or the TAA at trial. It did not have to do so. Review by direct appeal or mandamus is not relevant in the trial court. Olshan did, however, take steps to protect itself from the very outcome brought about by the majority. Not only did Olshan introduce evidence that the contract involved interstate commerce, an allegation and fact relevant for making the FAA applicable, Olshan took the belt-and-suspenders approach to obtain review of the order. Olshan filed both a direct appeal and a petition for writ of mandamus to obtain review of the trial court's refusal to refer the matter to arbitration. That is a common approach when it may be unresolved whether interstate commerce is involved, which determines whether the TAA or the FAA is applicable. *See, e.g.,*

---

**2.** The *per-curiam* majority overstates, as it is prone to do, Olshan's admission regarding invoking the FAA. The majority's statement is not an accurate representation of what is in the petition. The petition simply states that the issue was not *addressed or determined by the trial court*. (Pet. & Br. at 20 ("[B]ecause the application of the FAA or the TAA was never addressed or determined by Respon- dent, Relator did not present any such evidence of the Agreement's effect on commerce to Respondent.").) At no point does Olshan admit that it did not "invoke" the FAA as stated by the majority. Indeed, I have been unable to find the term "invoke" used in Olshan's petition, so I do not know what the majority is purporting to quote.

*In re Nexion Health at Humble, Inc.*, 173 S.W.3d 67, 68 (Tex.2005) (orig.proceeding).

We docketed the direct appeal as *Olshan Foundation Repair Co. of Dallas LLC v. Seay*, No. 10–06–00010–CV, 2006 WL 727758, 2006 Tex.App. LEXIS 2202 (Tex.App.-Waco Mar.22, 2006, no pet.) (mem.op.). We docketed the mandamus petition as the instant proceeding. In the latter, this Court did not question its jurisdiction; rather, we asked for a response from the real party in interest. *See* Tex. R.App. P. 52.4. Then, after briefing in this mandamus proceeding, and after the real party in interest did not seek dismissal for want of jurisdiction of this proceeding in its brief, Olshan advised the Court that it no longer wished to pursue the direct appeal. *Olshan Found. Repair v. Seay*, 2006 WL 727758, at \*1, 2006 Tex.App. LEXIS 2202, at \*1. The direct appeal was dismissed. *Id.* That was the implementation of entirely appropriate litigation strategy *by Olshan*—strategy that a majority of this Court has now circumvented.

Ultimately, disposition of this proceeding by dismissal for want of jurisdiction is only proper if the contract transaction did not involve interstate commerce and, therefore, the FAA was not applicable. *See* 9 U.S.C. §§ 1–2. The uncontroverted evidence in the record is that interstate commerce was involved. Therefore, dismissal for want of jurisdiction is erroneous.

The procedural problem in this disposition is that if we had notified the parties of the perceived problem, they could have briefed the issue, directed us to the relevant evidence of interstate commerce, and continued with their own litigation strategy, uninterrupted. That is the proper procedure under Texas Rule of Appellate Procedure 38.9(b). Instead, I had to carry this burden by responding to the majority opinion. I have previously suggested the

proper procedure but was rejected. *See Gonzales v. State*, 191 S.W.3d 741, 755-56 (Tex.App.-Waco, 2006, no pet.) (Gray, C.J., dissenting). More recently, the majority has been reversed for the failure to allow the parties to address perceived briefing deficiencies. *See Pena*, 191 S.W.3d at 135–36. The briefing deficiency perceived by the majority in this proceeding could have been easily overcome by expressly invoking the FAA or even invoking the FAA as an alternative to the TAA, if that were even necessary. And after the petition is denied, if not corrected on further review by the Supreme Court, all that will be necessary to bring this back to us as a mandamus is a simple reference to the FAA in a motion to arbitrate back in the trial court, and we are all right back where we were before the majority's interference.

Thus, I cannot agree that Olshan's mandamus can be denied because Olshan has not expressly referred to the FAA in the lower court when the FAA is clearly applicable and we have not given Olshan the opportunity to address the issue in briefs. I therefore dissent from the procedure used and the result obtained by the majority.

### PROPER ANALYSIS

This brings us to the proper analysis of the issues presented in this mandamus action.

Olshan Foundation Repair Company of Dallas performed foundation work on a house owned by Perrin. The foundation work came with a transferable warranty. Perrin sold the house to the Seays. The Seays had Olshan perform work under the warranty. The Seays sued Olshan and alleged that Olshan breached the express warranty and alleged other causes of action. Olshan filed a motion to dismiss pursuant to the Texas Residential Construction Liability Act, *see* Tex. Prop.Code

ANN. §§ 27.001–27.007 (Vernon 2000 & Supp.2005) ("RCLA"), and a motion to compel arbitration, *see* 9 U.S.C. §§ 1–16.[3] The trial court denied both motions. Olshan brings a petition for writ of mandamus to compel the trial court to grant the motions. We should conditionally grant the petition in part.

"In Texas, a person may obtain mandamus relief from a court action only if (1) the trial court clearly abused its discretion and (2) the party requesting mandamus has no adequate remedy by appeal." *In re Living Ctrs. of Tex., Inc.,* 175 S.W.3d 253, 255–56 (Tex.2005) (orig.proceeding); *accord In re Prudential Ins. Co.,* 148 S.W.3d 124, 135–36 (Tex.2004) (orig.proceeding); *Walker v. Packer,* 827 S.W.2d 833, 839 (Tex.1992) (orig.proceeding); *Johnson v. Fourth Court of Appeals,* 700 S.W.2d 916, 917 (Tex.1985) (orig.proceeding).

Olshan contends that the trial court abused its discretion in denying Olshan's motion to compel arbitration. The Seays argue that Olshan did not produce a copy of the agreement signed by Perrin, that Perrin did not knowingly agree to arbitration, and that an arbitration agreement between Olshan and Perrin would not be binding on the Seays.

"Mandamus relief is available when a trial court erroneously denies a motion to compel arbitration under the FAA." *In re Dillard Dep't Stores, Inc.,* 186 S.W.3d 514, 515 (Tex.2006) (orig.proceeding) (per curiam); *accord In re FirstMerit Bank, N.A.,* 52 S.W.3d 749, 753 (Tex.2001) (orig.proceeding). "[A] party seeking to compel arbitration under the FAA must establish that: (1) there is a valid arbitration agreement, and (2) the claims raised fall within that agreement's scope." *Dillard Dep't Stores* at 515 (quoting *In re Kellogg Brown & Root, Inc.,* 166 S.W.3d

732, 737 (Tex.2005) (orig.proceeding)) (alteration in *Dillard Dep't Stores* ).

"Because arbitration is contractual in nature, the FAA generally 'does not require parties to arbitrate when they have not agreed to do so.'" *Kellogg Brown & Root,* 166 S.W.3d at 738 (quoting *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.,* 489 U.S. 468, 478–79, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989)). "Federal and Texas state courts have recognized, however, that '[i]t does not follow . . . that under the [FAA] an obligation to arbitrate attaches only to one who has personally signed the written arbitration agreement'; instead, under certain circumstances, principles of contract law and agency may bind a non-signatory to an arbitration agreement." *Kellogg Brown & Root* at 738 (quoting *Fisser v. Int'l Bank,* 282 F.2d 231, 233 (2d Cir.1960)) (alteration in *Kellogg Brown & Root* ). Moreover, "[a]lthough the FAA requires an arbitration agreement to be written, it does not expressly require the agreement to be signed by the parties." *In re Big 8 Food Stores, Ltd.,* 166 S.W.3d 869, 876 (Tex. App.-El Paso 2005, orig. proceeding) (citing 9 U.S.C. § 3 (1999) & *Valero Ref., Inc. v. M/T Lauberhorn,* 813 F.2d 60, 63–64 (5th Cir.1987)); *In re Bunzl USA, Inc.,* 155 S.W.3d 202, 210 (Tex.App.-El Paso 2004, orig. proceeding [mand. denied] ). "Nevertheless, a party seeking to enforce a purported arbitration agreement must establish that the parties agreed to arbitrate the dispute." *Big 8 Food Stores* at 876 (citing *Am. Heritage Life Ins. Co. v. Lang,* 321 F.3d 533, 537 (5th Cir.2003)); *Bunzl USA* at 210.

"[A] nonparty may be compelled to arbitrate 'if it seeks, through the claim, to derive a direct benefit from the contract containing the arbitration provisions.'" *In*

---

**3.** The parties do not dispute that the FAA    governs.

*re Weekley Homes, L.P.,* 180 S.W.3d 127, 131 (Tex.2005) (orig.proceeding) (quoting *Kellogg Brown & Root,* 166 S.W.3d at 741). "[A] litigant who sues based on a contract subjects himself or herself to the contract's terms." *Weekley Homes* at 131 (quoting *FirstMerit Bank,* 52 S.W.3d at 755).

"Absent fraud, misrepresentation, or deceit, a party is bound by the terms of the contract he signed, regardless of whether he read it or thought it had different terms." *In re McKinney,* 167 S.W.3d 833, 834 (Tex.2005) (orig.proceeding) (per curiam).

The foundation-repair agreement stated, "A LIFETIME TRANSFERABLE WARRANTY IS ATTACHED TO, AND IS A PART OF, THIS CONTRACT...." The agreement also stated, "Notwithstanding, any provision in this agreement to the contrary, any dispute, controversy, or lawsuit between any of the parties to this agreement about any matter arising out of this agreement, shall be resolved by mandatory and binding arbitration...." Perrin testified that he signed the agreement and returned it to Olshan. The Seays repeatedly availed themselves of the warranty. The Seays have also sued for breach of the warranty.

Olshan established a valid agreement containing an arbitration clause. The Seay's breach-of-express-warranty suit is within the scope of the arbitration clause. In seeking to derive a benefit from the agreement's warranty, that suit subjects the Seays to arbitration under the agreement's arbitration clause. The trial court clearly abused its discretion in denying Olshan's motion to compel arbitration.

As to Olshan's RCLA argument, the application of the RCLA is a matter for arbitration. *See, e.g., Home Buyers Warranty Corp. v. Ward,* No. 05–97–00807–CV, 1999 WL 993740, at *4, 1999 Tex.App. LEXIS 7727, at *9–*11 (Tex.App.-Dallas Oct.18, 1999, no pet.) (not designated for publication) (arbitrators decided that RCLA did not apply). "Defenses that pertain to the entire ... contract can be arbitrated." *FirstMerit Bank,* 52 S.W.3d at 756; *accord Prima Paint Corp. v. Flood & Conklin Mfg. Co.,* 388 U.S. 395, 403–404, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967).

We should conditionally grant a writ of mandamus ordering Respondent to vacate his order of November 27, 2005; and order him to render an order granting Olshan's motion to compel arbitration and send a copy thereof to this Court within three days of the date it is signed. The writ should issue only if Respondent fails to do so within 20 days of the date of this opinion.

### CONCLUSION

I dissent. I really dissent.